UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:19-CV-25251-BLOOM/LOUIS

RAUL M. MELENDEZ,

    Plaintiff,

vs.

ANDREW SAUL, Acting Commissioner
of Social Security Administration,

    Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** came before the Court on the Parties' cross-motions for summary judgment (ECF Nos. 17, 21). These Motions were referred to the undersigned United States Magistrate Judge by the Honorable Beth Bloom, United States District Judge, for a Report and Recommendation (ECF No. 14). Upon consideration of the briefing and the record, and being otherwise fully advised in the premises, the undersigned **RECOMMENDS** that Plaintiff's Motion (ECF No. 17) be **DENIED** and Defendant's Motion (ECF No. 21) be **GRANTED**.

### I. PROCEDURAL BACKGROUND

This case involves a redetermination of Plaintiff Raul Mastrapa Melendez's application for social security income ("SSI") under the Social Security Act, 42 U.S.C. § 401, *et seq.* Plaintiff was deemed disabled on May 30, 2012, based on a determination made on July 27, 2012 (R. 26). The determination found that Plaintiff met the degree of severity required by Listing Section 12.06 of the Listing of Impairments (the "Listings") (R. 28). Plaintiff was first deemed disabled as a result of bipolar disorder, depression, and schizophrenia (R.77).

1

On November 23, 2016, the Social Security Administration ("SSA") conducted a Continuing Disability Review ("CDR") and found that claimant was no longer disabled as of November 2016 (R. 76-77, 92). This determination was upheld upon reconsideration after a disability hearing by a State Agency Disability Hearing Officer (R. 121-127). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on July 31, 2017 (R. 140). The hearing occurred in-person on January 23, 2019 (R. 45). During the hearing, Plaintiff and his mother testified in person without representation. Vocational Expert ("VE"), Jeannine Salek, also appeared and testified via telephone (*id.*).

On April 3, 2019, the ALJ issued her unfavorable decision, finding that the Plaintiff was no longer disabled within the meaning of the Act (R. 26). The ALJ determined that the comparison point decision ("CPD"), the most recent favorable medical decision finding that claimant continued to be disabled, was the determination dated July 27, 2012 (R. 28). At the time of the CPD, Plaintiff had the following medically determinable impairments: bipolar disorder; generalized anxiety disorder; and panic disorder with agoraphobia (*id.*). In her decision, the ALJ found that medical evidence supported a finding that as of November 1, 2016, there had been a decrease in medical severity of the impairments present at the time of the CPD (R. 30). The ALJ found this related to Plaintiff's ability to work because, as of November 1, 2016, the Plaintiff's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD (R. 28). The ALJ acknowledged that as of November 1, 2016, the Plaintiff continued to have a severe impairment or combination of impairments which limited his ability to perform basic work activities (*id*). However, based on the impairments present as of November 1, 2016, the claimant had residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: routine non-tandem tasks without

production pace; and occasional to superficial interaction with the general public (R. 30). The ALJ noted that Plaintiff has had no past relevant work, has at least a high school education, and is able to communicate in English (R. 34-35). Considering these factors, the ALJ found that Plaintiff was able to perform a significant number of jobs in the national economy such as: landscape laborer; laundry worker; and cleaner (R. 35). Ultimately, the ALJ concluded that Plaintiff's disability ended as of November 1, 2016 (R. 36). Plaintiff now seeks judicial review of the ALJ's decision in this case. Plaintiff has exhausted his administrative remedies and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## II. STANDARD OF REVIEW

### A. Legal Principles

This case involves a review of Plaintiff's continuing disability in order to determine if he remained eligible to receive benefits during a finite period of time, which requires an ALJ to engage in a multistep evaluation process. 20 C.F.R. §§ 404.1590(a), 404.1594(f). In a cessation of benefits case, the burden rests on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the Plaintiff has experienced "medical improvement." *Olivo v. Colvin*, No. 6:16-cv-259-Orl-40JRK, 2017 WL 708743, at *2 (M.D. Fla. Jan. 30, 2017); *see also Soto, v. Comm'r of Soc. Sec. Admin.*, No. 5:19-CV-568-OC-MAP, 2020 WL 4048210, at *2 (M.D. Fla. July 20, 2020).

A district court court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011). In determining whether

substantial evidence exists, the reviewing court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). A failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991); *see Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. THE RECORD

#### A. Hearing Testimony

##### i. Plaintiff's Testimony

Plaintiff was 36 years old at the time of the hearing and living with his mother in Hialeah, Florida (R. 48-50). Plaintiff averred that his mother supported him financially, and that despite having a driver's license, he was reliant on his parents to take him places (R. 50). Despite having a high school education and attending college for roughly a year and a half, Plaintiff contended that he never had a real job for more than a month or so, and his condition prevented him from working (R. 50-51). Plaintiff testified that he could not get a job because he could not be around

groups of people for he would get anxiety attacks causing sweaty palms, labored breathing, and his inability to focus (R. 51). Plaintiff explained that these issues started with depression and while he would go on walks to the park to try to distract himself, as recommended by his psychiatrist, he felt sad all the time and, had given up hope (R. 51-52). Plaintiff has been seeing his psychiatrist for roughly 12 years, and in addition to therapy, he takes a combination of medications on a daily basis to treat his impairments (R. 53). Plaintiff claimed that the medications help relax him, and that he needs to take certain medication as soon as he wakes up, but that these medications cause him to have bad dreams that wake him up in the middle of the night (R. 54, 57). Plaintiff further testified that he does not leave his house because it is stressful for him; he can't make purchases because he gets too nervous and so he avoids going to the market or mall; and he does not use the computer, though he watches television (R. 56). While Plaintiff describes his typical day as staying in the house and watching television, he stated that he can play guitar, though does not play as often as he used to, and that he also helps his mother with chores and feeds his fish (R. 58).

      **ii.**     **Plaintiff's Mother's Testimony**

Plaintiff's mother, Ileana Melendez, also testified at the hearing. She averred that she had to give up her career as a teacher to be close to her son (R. 59). She stated that she has to give him the proper doses of his medication every day (*id.*). His mother further told a story of sending Plaintiff to the market days before the hearing, and while he was able to go, he paid more than was needed (R. 60). She explained that she must accompany Plaintiff everywhere and that he has sudden changes in his personality, going from calm to argumentative (*id.*). Lastly, Plaintiff's mother testified that he was improved at times from his medications (*id.*).

### iii. Vocational Expert's Testimony

Vocational Expert, Jeannine Salek, was also questioned by the ALJ at the hearing. When asked whether there would be any jobs that could be performed by a hypothetical person with no past relevant work, who is able to work at all exertional levels, but requires routine tasks without strict production pace and with only occasional interaction with the general public, the VE testified that this hypothetical person could work as a landscape laborer, laundry worker, or cleaner (R. 63). When asked the same hypothetical, but with the person having non-tandem tasks and occasional to superficial interaction with the general public, the VE found that hypothetical person could perform the same jobs as with the first hypothetical (R. 64). Finally, when asked the same as the second hypothetical, but the person would be off-task twenty percent of the workday, excluding normal breaks, due to lack of concentration and the effects of medication, the VE found that such a person would not be able to maintain a job (*id.*). Plaintiff declined to ask the VE any follow up questions (R. 65).

### B. Summary of Relevant Medical Evidence

#### i. Rosa Martinez-Casuso, M.D.

Dr. Rosa Martinez-Casuso, M.D., has been Plaintiff's treating psychiatrist for roughly 12 years (R. 53). Dr. Martinez-Casuso's Individual Progress Notes dated November 11, 2016, stated that Plaintiff had been taking his medication without any side effects; that Plaintiff denied manic episodes; that he presented with a less depressed and anxious mood; that he had a girlfriend with whom he did activities; that he was alert and oriented; and that Plaintiff had no acute manic, psychotic, depressive or anxiety symptoms at the time (R. 615). Dr. Martinez-Casuso likewise found on January 1, 2017, that Plaintiff had no acute manic, psychotic, depressive or anxiety symptoms at the time, but noted that Plaintiff felt more depressed, was having more mood swings,

and felt less motivation to do activities (R. 671). Despite regularly noting that Plaintiff presented with a depressed and anxious mood, Dr. Martinez-Casuso again found that Plaintiff had no acute manic, psychotic, depressive or anxiety symptoms on February 10, 2017; March 10, 2017; April 7, 2017; May 10, 2017; and June 21, 2017 (R. 672-676). Dr. Martinez-Casuso's notes from June 21, 2017, did state, however, that Plaintiff had chronic symptoms and that he could decompensate without his medications (R. 676).

In August of 2017, Dr. Martinez-Casuso submitted a medical source statement opining that Plaintiff was unable to work at that time due to his illness and his impairments in functioning (R. 694). These impairments included decreased concentration, depressive and anxiety symptoms, mood swings and panic symptoms (*id.*). This medical source statement further noted that Plaintiff was stable on his medications and that he had been compliant with his treatment, but that he can decompensate if he does not have his treatment or medications (*id.*). Dr. Martinez-Casuso's Individual Progress Notes from the same month also state that Plaintiff is unable to work; has been very anxious; has been having more mood swings; and has been experiencing decreased sleep (R. 705). While the notes show an increase in medication, Dr. Martinez-Casuso still found that Plaintiff had no acute manic, psychotic, depressive or anxiety symptoms on August 17, 2017 (*id.*) and again in September and October of 2017 (R. 706-707).

In October 2017, Dr. Martinez-Casuso filled out an RFC Assessment in which she reported Plaintiff to suffer from Bipolar Disorder and anxiety with the following continuous symptoms: depressive mood; loss of interest or pleasure in activities; clinically significant change in weight; sleep disturbances; decreased energy; disturbed concentration; sadness; social withdrawal; restlessness; sleep disturbance; and panic attacks (R. 695, 699). Dr. Martinez-Casuso also found Plaintiff to have marked limitations in his ability to understand, remember or apply information as

well as his ability to adapt or manage himself (R. 696-697, 700-701). Dr. Martinez-Casuso found Plaintiff to have extreme limitations in his ability to interact with others and concentrate, persist or maintain pace (R. 696, 700-701).

In the monthly Individualized Progress Notes from November of 2017 through the end of 2018, Dr. Martinez-Casuso consistently found that Plaintiff presented with a depressed and anxious mood and congruent affect, but had no acute manic, psychotic, depressive or anxiety symptoms (R. 729-740). In December of 2018, Dr. Martinez-Casuso submitted another medical source statement, which states that Plaintiff was diagnosed with Bipolar Disorder, Generalized Anxiety Disorder and Panic Disorder with Agoraphobia (R. 744). It further states that Plaintiff is affected by his depressive and anxiety symptoms, and has marked to severe limitations in his functioning due to these symptoms (*id.*). Dr. Martinez-Casuso concludes that Plaintiff's prognosis is fair if he continues with treatment and medication, but he can decompensate if he is unable to have his treatment and medication (*id.*).

    ii.   **George Grubbs, Psy. D.**

George Grubbs, Psy.D., a state agency medical doctor, submitted a Disability Determination Explanation Form in November of 2016 based on a review of the evidence in the record (R. 67-75). Dr. Grubbs found that while the impairments could be expected to produce some of the claimant's stated symptoms, the record evidence did not support the level of severity of claimant's stated limitations (R.73). Though Dr. Grubbs found Plaintiff to have limitations with regard to understanding, memory, sustained concentration and persistence, he concluded that Plaintiff's impairments or combination of impairments were not severe enough to significantly limit Plaintiff's physical or mental ability to do basic work activities (R. 74).

### C. The ALJ's Decision

The ALJ found that since November 1, 2016, Plaintiff has not had an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 28). The ALJ noted that based on the records, Plaintiff has only a mild limitation in understanding, remembering or applying information and a moderate limitation with regard to concentrating, persisting or maintain pace, interacting with others and adapting or managing oneself (R. 28-29).

The ALJ found that there had been medical improvement of Plaintiff's impairments, which related to his ability to work (R. 30). In making this finding, the ALJ pointed to the fact that Plaintiff was taking medication; was positively intact at exams without acute findings; declined therapy; required no hospitalization; and engaged in activities that interested him (*id.*).

The ALJ determined that since November 1, 2016, Plaintiff continued to have a severe combination of impairments including Bipolar Disorder, Generalized Anxiety Disorder, and Panic Disorder with Agoraphobia but that these impairments were not sufficiently severe so as to significantly affect Plaintiff's ability to perform basic work (R. 30). The ALJ then found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with some non-exertional limitations (R. 30). In making this determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the record, and that Plaintiff's symptoms are largely manageable with medication (R. 31-32). It was also in making this determination that the ALJ addressed the medical opinions on record. The ALJ found Dr. Grubbs's opinion to be persuasive because the opinion related to his specialty, he had knowledge of the SSA's disability policies, and he reviewed of all the evidence (R.31). However, the ALJ was not persuaded by Dr. Martinez-Casuso's

opinions for she found the opinions to be vague; lacking details regarding functioning or work abilities; and that the severity of the opinions were inconsistent with the overall evidence of record, including Dr. Martinez-Casuso's own notes (R. 34). Finally, the ALJ determined that based on Plaintiff's age, education, and RFC, there were jobs Plaintiff could perform in the national economy (R. 35).[1]

## IV. DISCUSSION

Plaintiff argues that the ALJ committed reversible error in denying Plaintiff's claim for benefits. These reversible errors include the ALJ's failure to (a) obtain a proper waiver of the right to representation and otherwise failed to develop a full and fair record; (b) properly assess the opinion evidence of record; (c) support her findings with substantial evidence of record; and (d) properly assess Plaintiff's alleged symptoms and limitations (ECF No. 17).

Defendant, on the other hand, avers that (a) Plaintiff failed to show the ALJ violated his due process rights; (b) that the ALJ properly evaluated the medical evidence of record; (c) substantial evidence supported the ALJ's RFC determination; and (d) the ALJ properly evaluated Plaintiff's subjective complaints (ECF No. 21).

### A. Waiver of Right to Attorney and Due Process

Social Security administrative hearing proceedings are non-adversarial and informal in nature. 20 C.F.R. § 404.900(b). However, a plaintiff participating in such a hearing has a statutory right to counsel under 42 U.S.C. § 406, effectuated by 20 C.F.R. § 404.971. Pursuant to 42 U.S.C. § 406, the Commissioner of Social Security is required to "notify each claimant in writing . . . of the options for obtaining [attorney representation] in presenting their cases before the

---

[1] The ALJ also found that that Plaintiff had no past relevant work (R. 34) but failed to specifically address whether Plaintiff engaged in substantial gainful activity. However, whether Plaintiff engaged in substantial gainful activity is not contested as Plaintiff himself testified that he had not had a job (R. 51).

10

Commissioner of Social Security . . . [and] of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c). Here, Plaintiff was informed of his right to counsel prior to the hearing by way of the October 11, 2018 hearing notice, which stated Plaintiff "may choose to have a representative help . . . many representatives charge a fee. Some representatives charge a fee only if you receive benefits, Other may represent you for free" (R. 199). That hearing notice also included an insert entitled "Your Right to Representation" containing the necessary and relevant information (R. 205).

Plaintiff was not represented by counsel at the hearing and the ALJ did not address Plaintiff's right to counsel at the time of the hearing. However, roughly a week after the hearing, Plaintiff, by way of his mother, was contacted by a hearing officer about his lack or representation and was asked whether Plaintiff wanted to proceed without an attorney (R. 217). Plaintiff agreed that he wanted to continue without an attorney, and later executed a form waiving his right to representation (R. 217, 218).

Plaintiff now contends that he did not knowingly and voluntarily waive his right to counsel because he was not properly advised of his right to representation by the ALJ at the hearing. However, a failure to obtain a knowing and voluntary waiver of counsel does not always necessitate a remand. Rather, "a lack of representation where the claimant did not waive counsel gives rise to a 'special duty' [for the ALJ] to develop the record." *Thomas v. Comm'r of Soc. Sec.*, No. 20-11557, 2020 WL 7703135, at *2 (11th Cir. Dec. 29, 2020) (citing *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982)). "In carrying out this duty, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Smith*, F.2d 826 at 829 (citation omitted). Even so, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded

11

to the Secretary for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

In deciding whether a remand is justified, courts "are concerned not so much with whether every question was asked which might have been asked had [plaintiff] been represented by an attorney . . . ." *Smith*, 677 F.2d at 830. Rather, courts "'are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Thomas*, 2020 WL 7703135, at *3 (citing *Brown*, 44 F.3d at 935). In *Thomas*, the plaintiff contended that he was prejudiced by not knowingly waiving his right to an attorney on the belief that the VE was not properly questioned, and that a proper questioning of the VE would have changed the outcome of the proceedings. 2020 WL 7703135, at *3. There, the court found that such a proffer was conclusory, and denied remand. *Id*. Similarly in *Smith*, a social security claimant attempted to prove that his lack of counsel prejudiced him, but the court found that "[c]laimant's proffer of prejudice amounts to no more than speculations on ways in which an attorney could have bolstered his credibility before the ALJ. Although it is true, as the claimant asserts, that an attorney may have qualified some of the ALJ's questions, the record as a whole reveals that no relevant facts, documents, or other evidence were omitted from the ALJ's consideration or his findings." 677 F.2d at 830.

Here, Plaintiff makes the same conclusory proffer of prejudice regarding more favorable testimony that might have been elicited from the VE. Plaintiff attacks the ALJ's failure to pose a hypothetical based upon the limitations opined by Plaintiff's treating physician and claims that an attorney under these same circumstances would have cross-examined the VE to elicit testimony based on Dr. Casuso's opined limitations (ECF No. 17 at 8). However, as explained below, the ALJ properly discounted Dr. Casuso's opinioned limitations, and despite discounting these opinions, the ALJ still incorporated these limitations within the hypotheticals. Plaintiff fails to

show any evidentiary gaps that resulted in clear prejudice, especially in light of the ALJ's proper discounting of evidence. Thus, Plaintiff has not demonstrated that his due process rights were violated and that a remand is warranted.

### B. Evaluation of Medical Evidence

In determining whether a claimant is disabled, the ALJ evaluates every medical opinion received. *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 749 (11th Cir. 2018). "The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for those decisions, so as to enable a reviewing court to determine whether the ultimate decision is based on substantial evidence." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 764–65 (11th Cir. 2014). In weighing medical opinion evidence, an ALJ considers many factors such as the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record. *Brock*, 758 F. App'x at 750; 20 C.F.R. § 404.1527(c).

Furthermore, an ALJ must give the opinion of a claimant's treating physician substantial or considerable weight unless good cause exists not to. *Brock*, 758 F. App'x at 750. "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (citation omitted).

Plaintiff seeks remand based on the contention that the ALJ applied the incorrect standard, reflected in her statement that "[a]s for the medical opinions and prior administrative medical findings, we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from your medical sources" (ECF No. 17 at 10) (citing R. 33). Defendant counters that this statement merely relates to the prior administrative finding of disability made in 2012 and is an accurate statement

13

of the standard applicable to a cessation case (ECF No. 21 at 8). Indeed, the determination of whether benefits will continue is made "on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f); *Rivera v. Comm'r of Soc. Sec.*, No. 617CV2021ORL41KRS, 2018 WL 5300201, at *3 (M.D. Fla. Oct. 1, 2018), *report and recommendation adopted*, No. 617CV2021ORL41KRS, 2018 WL 5293228 (M.D. Fla. Oct. 25, 2018). The ALJ's statement does not reveal that she applied the wrong legal standard; moreover, the opinion reveals that the ALJ did in fact weigh the relevant medical evidence, stating that she was persuaded by Dr. Grubb's opinion and finding that Dr. Martinez-Casuso's opinions were not persuasive (R. 33-34).

Plaintiff further claims that the ALJ erred in finding the opinions of Plaintiff's treating physician, Dr. Martinez-Casuso, not to be persuasive, claiming good cause was not shown to give these opinions less than considerable weight (ECF No. 17 at 14). The Court disagrees. The undersigned is not in a position to reweigh the evidence or substitute its judgment for that of the Commissioner; the Court will only consider whether the ALJ has shown good cause to give less than substantial weight to Plaintiff's treating physician, and whether this good cause is supported by substantial evidence. In her decision, the ALJ specifically addressed the two medical source statements and the RFC Assessment prepared by Dr. Martinez-Casuso (R. 34). In doing so, the ALJ explained that the August 2017 medical source statement is not only vague and fails to provide a detailed opinion of functioning or work abilities, but it is also inconsistent with the record (*id.*). The ALJ points to specific inconsistencies, noting that Dr. Martinez-Casuso's diagnosis of agoraphobia is inconsistent with Plaintiff's reports to her of doing activities with his girlfriend and riding his bicycle (*id.*). The ALJ similarly explains that Dr. Martinez-Casuso's opinions are

inconsistent with her own treatment records, which largely show that Plaintiff is stable on medication; has not been hospitalized; has declined therapy; and which state Plaintiff does not have acute symptoms (*id.*). The ALJ also explained that Dr. Martinez-Casuso's opinions are inconsistent with other evidence in the record, such as normal mental status exams, and evidence suggesting Plaintiff is capable of doing things that interest him such as dating, playing guitar and watching television (*id.*). The ALJ further noted that Dr. Martinez-Casuso's opinions are unsupported by objective findings on exam (*id.*). Because the ALJ sufficiently articulated good cause not to afford Dr. Martinez-Casuso's opinions substantial weight, remand is not warranted on this ground.

### C. Findings Supported by Substantial Evidence

Plaintiff further contends that the ALJ's findings are not supported by substantial evidence of the record. Namely, Plaintiff avers that "if the ALJ had not endeavored to discount the substantial evidence of record to the extent she has done, it would be unreasonable to believe that such evidence would support a finding that despite the claimant's impairments, he could perform full-time, competitive work on a sustained basis" (ECF No. 17 at 15). But as discussed above, the ALJ showed good cause to discount certain evidence. The only other argument put forth by Plaintiff on this matter is that the hypotheticals posed to the VE were flawed for not including all functional limitations (*id.*). But again, the ALJ sufficiently articulated good cause for not being persuaded by the opinions in which many of these limitations were expressed, and the ALJ did in fact account for such limitations in the hypotheticals presented to the ALJ. The hypotheticals included Plaintiff's limitations regarding social interaction and anxiety in that the hypothetical called for non-tandem tasks and occasional to superficial interaction with the general public (R. 63-34). The hypotheticals further called for routine tasks without strict production pace, to account

for Plaintiff's alleged limitations with regard to concentration and persisting or maintaining pace (*id.*). One hypothetical even included the need to be off-task twenty percent of the workday, excluding normal breaks, due to lack of concentration and the effects of medication (*id.*). Thus, remand is not warranted on this ground.

### D. Plaintiff's Alleged Symptoms and Limitations

Lastly, Plaintiff avers that the ALJ failed to properly assess his symptoms and limitations. To support this assertion, Plaintiff contends that his complaints regarding his symptoms and limitations have been consistent throughout the record, and the ALJ did not provide good cause for discounting them (ECF No. 17 at 20).

When a plaintiff attempts to prove disability based on his subjective complaints, he must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of his alleged symptoms, or (2) evidence establishing that his medical condition could reasonably be expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes that he has an impairment that could reasonably expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on the plaintiff's ability to work. *Id*. Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record (R. 31).

In making this finding the ALJ addressed the symptoms and limitations alleged by Plaintiff, including his desire to be alone; his reliance on his mother; his anxiety; his desire not to leave his

room; the stress caused by leaving the house; and the side effects of his medications among other limitations (*id*.). However, the ALJ concluded that these symptoms are largely manageable with medication and the ALJ's finding on this point is supported by substantial evidence (R. 32). The ALJ further pointed to other evidence in the record that is inconsistent with the persistence and limiting effects of the symptoms alleged by Plaintiff, including some normal psychiatric exams; lack of hospitalizations; Plaintiff's ability to engage in activities that interest him such as spending time with his girlfriend, exercising in the park and riding his bicycle; Plaintiff's regular denial of side effects from his medication; evidence that he remained cognitively intact; and his ability to travel out of state to visit his father (*id*.).

Ultimately, the ALJ explained that she accepts the claimant has some limitations in functioning due to his impairments and, as previously noted, that Plaintiff's complaints were considered in her RFC assessment: "The claimant's complaints of anxiety around others and moderate limitations in social functioning is considered in limiting him to non-tandem tasks with only occasional to superficial interaction with the public. The claimant's complaints of difficulty with motivation and focusing, and moderate limitations in concentration/persistence/pace are considered in limiting him to routine tasks without a production pace. The claimant's complaints of difficulties managing his symptoms and reliance on his mother, and his moderate limitations in adaption and managing himself, are considered in limiting him to routine tasks that are without production pace" (R. 33). Thus, the ALJ properly assessed and considered Plaintiff's symptoms and limitations, and remand is not warranted on this ground.

V.   **RECOMMENDATIONS**

For the forgoing reasons, the undersign respectfully **RECOMMENDS** that Plaintiff's Motion (ECF No. 17) be **DENIED** and Defendant's Motion (ECF No. 21) be **GRANTED.**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Beth Bloom, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers this on this 11th day of January, 2021.

_____
**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**